## Dunavant v. Commonwealth.

(Decided June 13, 1911.)

### Appeal from Laurel Circuit Court.

1. Embezzlement—Fraudulent Conversion—A person who occupies the confidential and trust position of book-keeper and manager,

and in such capacity receives funds belonging to his employer and fraudulently and wrongfully converts same to his own use, is guilty of the offense denounced by section 1358a of the Kentucky Statutes.

2. Instructions—Theory of the Defense Should be Submitted— Where the issue between the Commonwealth and the accused grew out of a contract, and the guilt or innocence of the accused depended upon which version of the contract was correct, the court should have submitted to the jury instructions presenting both the theory of the Commonwealth and the accused.

SAM C. HARDIN, for appellant.

JAMES BREATHITT, Atty. Genl., and CHAS. H. MORRIS, Asst. Atty. Genl., for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The indictment under which the appellant was convicted charges in substance that about July 1, 1908, he entered into a contract with F. C. Jones, who was about to engage in mining and shipping coal, whereby it was agreed between them that Dunavant as the employe of Jones should act as bookkeeper, and that all shipments of coal from the mines of Jones should be made by and billed in the name of Dunavant and the proceeds of sales were to be received by Dunavant and turned over to Jones, for which service Dunavant was to receive a stipulated compensation. That under this agreement Dunavant entered the employment of Jones and continued in his employment until January 15, 1909. That in January, 1909, while acting in such a relation Dunavant sold coal amounting to $1,274.70, which belonged to Jones, and fraudulently converted this sum to his own use.

Jones testified in substance that about the 1st of August, 1908, Dunavant, who was at the time and had been for a year or more operating a coal mine he had leased from one Curvin, sold his lease to Jones, together with a lot of personal property, for which Jones agreed to pay him $600. He further testified that as a part of the contract of purchase and sale, he entered into an agreement with Dunavant, by which Dunavant was to weigh the coal, keep the books, and attend generally to the operation of the mine, and for this service he was to receive one-half the profits made in the operation

of the mine. That the coal was to be billed in the name of Dunavant, who was to receive the checks for coal sold, and turn them over to Jones. That Dunavant was also to receive one-half the rent of the houses in the coal camp that the miners lived in. That under this arrangement Dunavant continued to work until about the 14th of January, 1909, when he quit. That some time in January previous to the 14th Dunavant collected on coal that was shipped $1,270 and more and failed to pay the same over to him.

Dunavant testified in substance that Jones was to pay him $1,250 as the purchase price of the property and lease that he sold to him, and that he was to operate the mine as he had been doing until the 15th of January, 1909. That under the contract all the money received from coal sold up to January 15, 1909, belonged to him. That he was not to turn over to Jones either the checks or the money received for the coal. That Jones had no interest whatever in the check for $1,274.70 mentioned in the indictment and upon which the prosecution was based, as this check was the proceeds of coal sold before January 15, 1909.

It will thus be seen that there was wide difference in the evidence of Jones and Dunavant as to the nature and terms of the contract entered into between them in July or August, 1908, Jones' version of the contract being that all the money received for coal after that time belonged to him, and that Dunavant as bookkeeper and manager was to collect the coal bills and pay the money to him, receiving for his services one-half the net profits made in the operation of the mine and one-half the rent of the houses occupied by the miners; while Dunavant's version of it is that he was to continue to operate the mine until January 15, 1909, as he had been before he sold it to Jones, and that all the money received from sales of coal during this time belonged to him.

The court instructed the jury as follows:

"If you believe from the evidence beyond a reasonable doubt that on or about August 1, 1908, the defendant, William Dunavant, and the prosecuting witness, F. C. Jones, entered into a contract and agreement with each other whereby it was agreed between the said parties that the said Dunavant should act as bookkeeper for the said Jones at the Viva mines, in Laurel County,

Kentucky, and that the said Jones was then engaged in and shipping coal from said mines, and was the owner or lessee of the said mines, and that it was agreed between them that all the shipments of coal from the said mines by said Jones should be made by and billed out in the name of the said Dunavant, and that the proceeds of each of said sales and shipments were to be received by the said Dunavant in his own name, and turned over to the said Jones, and that the said Dunavant was to receive from the said Jones for his said services an agreed compensation; and shall further believe from the evidence beyond a reasonable doubt that the said William Dunavant in Laurel County, Kentucky, on the —— day of January, 1909, and before the finding of the indictment herein, and while he was acting as bookkeeper at the mines aforesaid for the said F. C. Jones, received from the Snead & McGuire Coal Company, a corporation of Louisville, Kentucky, $1,274.70, and that same was in payment of coal owned by the said F. C. Jones, and shipped from his mines at Viva, Kentucky, and under the pursuant to the contract aforesaid, and was received by the defendant while acting for and on behalf of the said Jones under the contract aforesaid, and by reason of his said employment, and that the said Dunavant then willfully and fraudulently converted the same to his own use and benefit without the knowledge or consent of the said Jones, but against his will, and with the intent and purpose of fraudulently depriving the owner thereof, then you will find the defendant guilty, and fix his punishment at confinement in the State penitentiary for a period of not less than one and not more than five years, in your discretion, according to the proof.

"No. 2. If you have a reasonable doubt from the evidence of the defendant having been proven guilty, then you will find him not guilty."

These were the only instructions given by the court.

The indictment was found under section 1358a, of the Kentucky Statutes, reading:

"That any person who shall sell, dispose of or convert to his or her own use or the use of another, any money, property, or other thing of value without the consent of the owner thereof, shall be punished by confinement in the penitentiary for not less than one nor

more than five years; if the money, property or other thing of value so sold, disposed of or controverted to his or her own use be of the value of twenty dollars or more; or be confined in the county jail for not less than one nor more than twelve months if the value be less than twenty dollars.

It is the contention of counsel for appellant on this appeal, first, that the motion made for a peremptory instruction should have been sustained, as the evidence of Jones did not bring the case within the meaning of the statute; and, second, that the court erred in failing to instruct the jury as to the whole law of the case.

If, as testified to by Jones, Dunavant occupied the confidential and trust position of bookkeeper and manager, and in such capacity received funds belonging to Jones, which he fraudulently and wrongfully converted to his own use, he was guilty of the offense denounced by the statute. Commonwealth v. Barney, 115 Ky., 475; Roland v. Commonwealth, 134 Ky., 170; Commonwealth v. Kelley, 125 Ky., 245. And so the indictment was good and the evidence of Jones sufficient to authorize the submission of the case to the jury and to sustain a verdict of conviction if one had been found by a properly instructed jury. But the court erred in failing to instruct the jury as to the whole law of the case. No instruction was given presenting the appellant's theory of the case. His defense was entirely ignored in the instructions given. Smith v. Commonwealth, 141 Ky., 534. If the contract was as testified to by Dunavant, or if he in good faith believed that it was as he related it, he was not guilty of wrong-doing under 'the statute. There must be a fraudulent conversion to constitute the offense, and if Dunavant had or in good faith believed he had the right to retain and appropriate to his own use the money he was charged in the indictment with the conversion of, the statute was not violated. Upon another trial, in addition to the instructions given on the last trial, the jury should be instructed in substance that if they believed from the evidence that under the contract between Jones and Dunavant, Dunavant had the right to retain the proceeds realized from the sale of coal up to the 15th of January, 1909, or if they believed from the evidence that he in good faith believed that under the contract he had the right to collect and retain

the money, they should find him not guilty. It is man-
ifest that the failure to give this instruction was sub-
stantial error as the jury in considering the law of the
case did not have before them an instruction present-
ing the view that if Dunavant's version of the contract
was correct, he did not commit any offense.

For the error indicated, the judgment must be re-
versed, and it is so ordered.