# Commonwealth v. Shilladay.

November 18, 1949.

Funk and Guy E. Dickinson for appellant.

Wm. S. Heidenburg, W. Clark Otte and Luther M. Roberts for appellee.

STANLEY, COMMISSIONER—Certifying the law.

The Commonwealth alleges error to its prejudice in the judgment entered on a peremptory instruction to acquit the appellee, Louis W. Shilladay, on a charge of

converting to his own use property of another and asks the certification of the law. Sec. 337, Criminal Code of Practice.

The indictment, brought under KRS 434.220, accuses the appellee and five other public accountants with having "unlawfully, fraudulently and feloniously converted to their own use" certain audit work sheets of the value of more than $20, the property of Mrs. Patricia O'Brien Smith, while acting as her agents and employees. Shilladay alone was tried.

Mrs. Smith had brought suit in the United States District Court against the administrators of the estate of her late first husband, John A. O'Brien, to recover of them in their individual capacity $820,000 for malfeasance or negligence in selling his interest in the firm of Edward J. O'Brien and Company and its subsidiaries. It was charged that the interest which she acquired under his will was sold for $380,000 when it was worth at least $1,200,000. See O'Brien v. O'Brien, 294 Ky. 793, 172 S. W. 2d 595, certiorari denied 321 U. S. 767, 64 S. Ct. 518, 88 L. Ed. 1063, a suit which was in part to rescind the contract; also Smith v. Louisville Trust Company, 308 Ky. 189, 213 S. W. 2d 987, relating to the settlement of the estate. Mrs. Smith had obtained an order of the United States District Court permitting her to have an audit made of the affairs of the O'Brien Companies for use in the prosecution of her suit. She first employed Edward J. Wirotzious, a certified public accountant, of Memphis, to make the audit. He had done considerable work before February, 1948, when he informed Mrs. Smith that he would be unable to complete it in time for the trial of the case, which had been set for May 5, 1948. He turned over to Mrs. Smith all his auditing work sheets and received $6,422 for his service. It was contemplated that he would testify on the trial of the case. Mrs. Smith then engaged the Arthur Young Company, a firm of public accountants of Chicago. The written contract provided, among other things, that their report would be submitted to Mrs. Smith by April 25 in order that a copy of the audit could be placed in the hands of opposing counsel by the 28th, a week before the trial. This contract was made with James M. Groves, a member of the partnership who is included in the indictment herein. Mr. Shil-

laday was the Louisville representative of the firm and was placed in charge. The other men indicted were accountants assisting in the work. There had been discussions between Mrs. Smith and Mr. Groves about what use could be made of the work sheets prepared by Mr. Wirotzious. Groves believed they might be of some use, and he advised Mrs. Smith it would be necessary to obtain Mr. Wirotzious' consent. He wrote the Young Company on February 23 outlining his previous employment and reasons for its severance. The letter stated, ''I herewith turn over to your company all of the work sheets we have completed since January 19, 1948, so that no time has been or will be lost by Mrs. Smith in employing your company to finish this job for her.'' Mrs. Smith signed an endorsement on the letter relieving Mr. Wirotzious and his firm from all responsibility under their contract. There is no reference in this letter to any return of the papers. However, Mr. Wirotzious testified he had given the papers to Mrs. Smith and relinquished his control over them.

It is provided in the statute relating to public accountants that, ''All statements, records, schedules, working papers, and memoranda made by a certified public accountant or public accountant incident to or in the course of professional service to clients by such certified public accountant or public accountant, except reports submitted by a certified public accountant or public accountant to a client, shall be and remain the property of such certified public accountant or public accountant, in the absence of an express agreement between the certified public accountant or public accountant and the client to the contrary.'' KRS 325.420.

Mrs. Smith's testimony is that she had an oral agreement not only with Mr. Wirotzious but with the Young Company, that none of the work sheets or papers should be taken out of Louisville. She testified that the Wirotzious papers, under an express agreement, were to be and had become her individual property. Mr. Wirotzious' testimony is that at the beginning it had been agreed that the papers would remain Mrs. Smith's until after the trial of the case, and when that was over, the accountants could have the papers back if they wanted them. Thus, it was an open question whether the papers charged to have been converted were in fact

the property of Mrs. Smith as charged in the indictment.

The testimony as to the act charged to have been a criminal conversion is that in the afternoon of April 6, 1948, Shilladay had taken the Wirotzious papers and all his own work sheets to Chicago without having notified his client and that the four associate accountants were preparing to leave that night by train. Upon learning this, Mrs. Smith had warrants issued and they were arrested that evening and lodged in jail for the night until bond could be executed the next morning. The indictment against them, Shilladay and Groves, was returned on April 17. Shilladay was brought back to Louisville from Chicago on the requisition of the Governor, although it appears that until his arrest he had no knowledge of the institution of criminal proceedings or of the indictment against him. The detective who went for Shilladay testified he had said on April 21 that he did not intend to send the papers back until after May 1. The audit report was sent Mrs. Smith on April 22, and the Wirotzious work papers on May 1. They were accompanied by a letter concerning the testimony on the trial and stating that the papers should be returned to them after the trial for their permanent file. On April 14 Groves, for his company, had written Mrs. Smith that the audit had been substantially completed, though the report was not ready but would be submitted on or before April 25. This was the date specified in the contract. He called attention to the fact that Mrs. Smith had not paid them for their services in accordance with her agreement and asked what she proposed to do with reference to the overdue indebtedness and charges for further services. As a matter of fact, the trial of the case was postponed from May 1 to a much later date, the delay in returning the papers and in submitting the audit apparently having little if anything to do with the continuance of the case. Mr. Smith testified that the accounting firm had assured him they would give testimony and cooperate in the prosecution of the civil suit but he was not willing that they should because he did not trust them.

The peremptory instruction was given at the conclusion of the evidence introduced by the Commonwealth, the essentials of which are briefly summarized above.

The opinion of the circuit court recites several reasons for the directed acquittal. One of them is the conclusion that though Mrs. Smith had the right to use the papers, they were not her sole property since Wirotzious had expected them to be returned to him when they had been used for his permanent possession and control and had such right under the statute. Other reasons may be summed up as the absence of proof of a criminal intent on the part of the defendant. We limit our opinion to that point.

The letter of KRS 434.220 does not require that the conversion of property shall be with a criminal intent. But soon after the enactment of the original statute (Acts of 1902, Chapter 66; Sec. 1358, Ky. Stat.) the court construed the law as embracing only acts that are intentionally fraudulent. Commonwealth v. Barney, 115 Ky. 475, 74 S. W. 181, 182, 24 Ky. Law Rep. 2352. The title to the act, regarded as an essential part of the law, showed that to be true. It was pointed out that "generally in legal, as always in moral, contemplation, crime proceeds alone from a wicked mind." The act was shown to be part of the piecemeal extension or tightening up of the embezzlement statutes. It was held that not only must there have been a fraudulent intent, but the accused person must have occupied a confidential relation to the person whose property or money he had fraudulently obtained or converted. At the time of the enactment, the statute defining embezzlement was confined to property of a corporation, Sec. 1202, Ky. Stat., and this enactment permitted prosecution for the same kind of wrongful conversion of property of an individual which, up to that time, was only a breach of trust. The present embezzlement statute embraces both corporations and individuals. KRS 434.010. The opinion in the Barney case has been the consistent construction of the statute. Farmer v. Commonwealth, 91 S. W. 1129; Commonwealth v. Kelley, 125 Ky. 245, 101 S. W. 315, 15 Ann. Cas. 573, 30 K. L. R. 1293; Commonwealth v. Weddle, 176 Ky. 780, 197 S. W. 446; Runyon v. Commonwealth, 215 Ky. 689, 286 S. W. 1076; Oliver v. Commonwealth, 251 Ky. 42, 64 S. W. 2d 439. The present indictment contained the essential charge that the property had been fraudulently and feloniously con-

verted, i. e., with a criminal intent, so that the essential element or fact must have been proved.

Of course, criminal intent may be gathered from expressly proven acts of the accused and surrounding circumstances. But if those facts do not afford a reasonable inference of a felonious intent to deprive the owner of his property, no offense has been proved. The vital difference is the accused's state of mind. If property charged to have been converted was lawfully in possession and appropriated or retained under a contract or a good-faith claim of right, the statute is not violated. Dunavant v. Commonwealth, 144 Ky. 210, 137 S. W. 1051; Bass v. Commonwealth, 232 Ky. 445, 23 S. W. 2d 926; Westerfield v. Prudential Insurance Company, 264 Ky. 448, 94 S. W. 2d 986. The record in this case quite satisfactorily shows that the work papers were taken to Chicago in order that the report of the auditors might be prepared at the offices of the company where there were better facilities and that the papers in controversy would be returned when they were no longer needed. We cannot see any intent to deprive Mrs. Smith of the owership or of any rightful use of these papers. At most, there was but a breach of an agreement not to take the papers out of Louisville. A mere breach of contract does not constitutea criminal conversion. A private wrong is not a public wrong. In the absence of any reasonable inference of proof of any criminal purpose, the court properly directed a verdict of not guilty.

The law is so certified.