## Robinson v. Commonwealth.

January 13, 1950.

Vernon A. Dinkle and Leonard C. Fielder for appellant.

A. E. Funk, Attorney General, Wm. F. Simpson, Assistant Attorney General, for appellee.

STANLEY, COMMISSIONER—Reversing.

It seems to us the conviction of the appellant, Earl Robinson, should be set aside for insufficient evidence of a criminal intent, an essential element of the offense with which he is charged, namely, converting to his own use property of another person without his consent, KRS 434.220.

As pointed out recently in Commonwealth v. Shilladay, 311 Ky. 478, 224 S. W. 2d 685, in order to be guilty of the crime created by the statute, the accused must have occupied a confidential or trust relationship to the owner and have had a criminal intent to deprive him of his money or property. In short, the accused must have been in the rightful possession of it and have stolen it. We examine the evidence to discern if reasonably possible that these essential elements were proved, or whether there was shown merely the failure to pay an obligation which arose by subsequent events.

The defendant was a member of a partnership styled "Robinson and Son, Realtors," engaged in the business of selling real estate in Ashland. He negotiated the sale of certain property belonging to Mrs. Beatrice Howard to Ferman Wells. According to Wells, the agreement was that he should pay $800 cash and Robinson was to arrange for a loan for the balance of

$5,500 for the house and lot and the furniture therein. He gave $800 in currency to Paul Miller, a member of the partnership, who deposited the money in the bank account of the partnership. A lending agency of an insurance company approved a loan to Wells of $4,700, and a check for that sum was sent to its representative in Ashland to be delivered upon the conveyance and mortgage of the real estate. According to Robinson, he had given Wells to understand clearly that he had nothing to do with the sale of the household furnishings, for which sum he had agreed to pay Mrs. Howard $800, and that he, Robinson, would not and had not undertaken to procure a loan to cover that consideration. At the time the check for the loan reached Ashland, Robinson was in Florida temporarily and Mrs. Howard was in Arizona. In time Wells and Mrs. Howard met at the office of Mr. Dinkle, the local representative of the lending agency, while he still held the check for $4,700. The trade between them was then called off. But it appears that after the check had been returned by Dinkle to the lending company, Mrs. Howard called and expressed a willingness to go through with it.

Wells does not testify that he ever asked Robinson or Mrs. Howard for the return or repayment of the $800 cash consideration, and there is no contradiction in Robinson's testimony that on January 12, 1948, he had given his note for that sum to Wells. Wells' testimony is merely that he had not got his money back. He said nothing about the note. He admits that he was liable for the cost of procuring the loan, which is shown to have been about $100, and Robinson testified that he was entitled to receive commissions from Mrs. Howard of $325.

There may be some doubt whether under these circumstances the $800 was paid to the partnership firm as Wells' agents, hence, that the essential trust or agency relationship existed between them as charged in the indictment, for the money seems to have been paid to the firm as agents of the seller, Mrs. Howard, as a down payment on the purchase price of the property. But if we consider the case as establishing such relation to Wells, still there is nothing whatever other than evidence of a bona fide transaction which was never completed by the seller and purchaser of the property.

There was doubtless a misunderstanding between Wells and Robinson about raising the money. The reasons for such failure are not material to this case for the charge is the embezzlement by the defendant of Wells' money. Since the money went into the bank account of the partnership and was not refunded, the proof is only of a civil obligation upon its members. There is no contradiction of Miller or Robinson that they were doing a successful business and that the defendant was in good financial condition at the time. Moreover, the acceptance of Robinson's note would seem to have been in satisfaction, and a novation of the debt.

It is proved by the defendant that the transaction was handled in the usual and customary manner. Had there been anything to show that the deal negotiated by the defendant was not a good faith one or anything to show that there was some fraudulent scheme to obtain and retain Wells' money, a criminal intent might be inferable, but in all this record we perceive no evidence from which such intent can be deduced. It seems to us that the proof only showed a civil oligation. We are of opinion, therefore, that the court should have directed a verdict of acquittal.

It is not necessary that we express an opinion as to the instructions.

The judgment is reversed.