324 P.2d 1012

Leonard M. OLSON, Plaintiff and Appellant,

v.

INDEPENDENT ORDER OF FORESTERS, a corporation, and Thomas McGahan, Defendants and Respondents.

No. 8668.

Supreme Court of Utah.

May 6, 1958.

———◆———

Dean E. Flanders, Raymond R. Brady, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, Albert R. Bowen, Salt Lake City, for respondents.

WADE, Justice.

Leonard M. Olson, appellant herein, commenced an action for malicious prosecution against the Independent Order of Foresters and Thomas McGahan. After the presentation of appellant's evidence the trial court upon respondents' motion dismissed the action. This appeal is from such judgment of dismissal. Hereafter the Independent Order of Foresters will be referred to by that name or by the term "corporation."

Appellant had been the manager of the Independent Order of Foresters in the state of Utah for a period of about seven years before his services were terminated as of February 17, 1954. The business of the Independent Order of Foresters was to obtain members to whom insurance was sold. Appellant sold memberships, collected the premiums and kept the books of the Utah transactions. When he was discharged a demand was made upon him to turn over the books, records and money to the man who was to replace him in the position which he had held. Appellant consented to and did give the books and records to the new manager but refused to relinquish his possession of the money until a complete audit was had between the parties. The negotiations between the parties for an audit failed to sail smoothly and appellant removed the money from the bank in which he had originally deposited it to another bank and in 1955 when he moved from Utah to California he had the money transferred to him in that state. Before appellant left Utah for California he instituted a suit against the corporation for an accounting. Although appellant did not inform the corporation of his removal to California he left his forwarding address with the United States Post Office and the corporation was able to and did contact him at his new residence. When appellant was in Salt Lake City, Utah, on January 20, 1956, the day on which the accounting suit had been set for trial and after a hearing in which the court had ordered that the money in appellant's possession be paid into court by March 1 pending the outcome of the accounting suit, and that he pay $200 toward an audit, he was arrested on the complaint of the corporation and charged with embezzlement of these funds. At the preliminary hearing on this charge

the magistrate bound him over to stand trial. He was subsequently acquitted by a jury. He also complied with the court's order and paid the money into the court by March 1 and paid for an audit. This audit showed a potential amount of over $9,000 which might be owing from the corporation to appellant. The amount appellant had in his possession was less than $5,500.

It is respondents' contention that a magistrate having bound the appellant over for trial on the charge of embezzlement, it is prima facie proof of probable cause which can only be overcome by evidence/which shows that the order was obtained by fraud, perjury or other undue or unfair means, citing Kennedy v. Burbidge, 54 Utah 497, 183 P. 325, 5 A.L.R. 1682. That case is no authority for such a holding. It merely holds that where there has been a conviction and a subsequent reversal, the presumption of probable cause can only be overcome by evidence that the conviction was obtained by fraud, perjury or other undue means. The effect to be given the presumption of probable cause after a conviction, however, is not the same as that given to a binding over by a magistrate. See Restatement of the Law of Torts, Vol. 111, Sec. 667(1) and Sec. 663 (2), comment h. Sec. 667(1) states: "The conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." Sec. 663(2) states: "The magistrate's commitment of the accused is evidence that the person initiating the proceedings had probable cause." And comment "h" thereof states: "In determining what, *if any,* weight should be given to the commitment by a magistrate, the court should take into account evidence that the commitment was due to the misconduct of the magistrate or was procured by false testimony offered by the prosecutor or given in his behalf." (Emphasis ours.) In other words such evidence would be competent to prove lack of probable cause, but it would not be the only evidence which could prove such lack. There can be no doubt that proof of fraud, perjury or other undue means in procuring a magistrate to bind over a plaintiff in an action for malicious prosecution would overcome any presumption of probable cause for such binding over, but it does not follow that the absence of such evidence makes the binding over by a magistrate conclusive evidence of probable cause.

In the instant case it is not denied that the appellant herein was claiming that respondent owed him money and was claiming to hold the money until an audit was made to determine how much was due him. Appellant had been accused of embezzlement in violation of Sections 76–17–1 and 76–17–4, U.C.A.1953. Sec. 76–17–1 reads:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."

Sec. 76-17-4 reads:

"Every trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector, or person otherwise intrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

It is apparent from a reading of these statutes that the gravamen of the crime of embezzlement is a fraudulent appropriation to one's own use of the property entrusted. This is made perfectly clear by the provisions of Sec. 76-17-10, which reads:

"Upon any indictment for embezzlement it is a sufficient defense that the property was appropriated openly and avowedly and under a claim of title made in good faith, even though such claim is untenable."

Appellant herein having openly and avowedly appropriated the money under a claim of title, which, if made in good faith, would not have been guilty of any crime. An acquittal under such circumstances is evidence of lack of probable cause in a suit for malicious prosecution because it tends to prove that the prosecutor did not have a reasonable belief that a crime was actually committed. See Westerfield v. Prudential Ins. Co. of America, 264 Ky. 448, 94 S.W. 2d 986, wherein the trial court in an action for malicious prosecution granted a motion for dismissal after proof that the defendant therein had procured a grand jury indictment for embezzlement of which crime the plaintiff had been acquitted, when the company knew that its former employee (the plaintiff) was retaining collections pending compliance with a demand by him for an audit which he claimed would show that more money was due him than he was retaining. The appellate court reversed on the ground that if the plaintiff's claim to retain possession of the money was made in good faith and under a claim of right, no crime was committed and when the defendant obtained an indictment from the grand jury under such circumstances, a prima facie showing of lack of probable cause had been made and the case should have been submitted to the jury on that question. Although in the instant case a magistrate bound over appellant herein, and in the Westerfield case, supra, the action was by grand jury indictment, the effect as a showing of probable cause for such prosecutions are the same in both instances. See Restatement of the Law of Torts, Vol. 111, Sec. 664, comment a.

Reversed with instructions to grant a new trial. Costs to appellant.

326

WORTHEN, J., concurs.

McDONOUGH, C. J., and CROCKETT, J., concur in the result.

HENRIOD, Justice.

I dissent, respectfully suggesting that the facts as related in plaintiff's brief themselves make it appear that a prosecutor, a magistrate or a trial judge reasonably could have concluded that probable cause was more than evident. His brief shows that the money involved was corporate funds in defendant's account prior to and on February 17, the last day of plaintiff's employment. On February 18, at a time when plaintiff no longer was employed by defendant, he withdrew the funds, which, under Title 31–17–22, U.C.A.1953, were trust funds. He deposited them to his personal account in the same bank. Later he deposited them elsewhere locally. Finally he left the state and took the funds with him, depositing them in his own name in a California bank. Doing so he employed a terminated fiduciary relationship to withdraw funds belonging to a former employer. Had the funds been so withdrawn and deposited in his name a year after his employment was ended, little difficulty would be met in finding a misappropriation. The time of appropriation is but a matter of degree and not one of justification or transmutation of irregularity into regularity. Plaintiff well might have frozen the funds in orderly fashion in a suit to pursue any claimed amount due, but, in asserting his claim, he chose the irregular method of exercising unauthorized dominion over funds in which he had no interest or claim.

In addition to the foregoing, I believe the main opinion has overextended itself in approving and excusing plaintiff's conduct, in implying that the county attorney acted in bad faith and in upsetting the decision of the trial court. The opinion has the following to say:

"Appellant herein having openly and avowedly appropriated the money under a claim of title, which, *if made in good faith* [italics supplied], could not have been guilty of any crime and an acquittal under such circumstances is evidence of lack of probable cause in a suit for malicious prosecution because it tends to prove that the prosecutor did not have a reasonable belief that the crime was actually committed."

This statement is a non sequitur demanding a concession of fact and conclusion obviously not shared by the county attorney, the district attorney, the committing magistrate or the trial judge,—unless all were acting in bad faith or with unreasonably misguided judgment. The statement seems to attribute to the public officials the necessary malice rather than to the complaining witness. Nowhere in the opinion is found reference to any conduct of defendant

constituting much of anything except a presentation of the facts to the county attorney who issued the complaint, and the opinion points to no mala fides of any kind, unless by way of conjecture.

In this type of action, generally frowned upon in our legal system, surely some kind of showing should be revealed that would justify presentation of the case to the jury. The main opinion devotes itself only to a repetition of certain generalities lifted from the Restatement, quotations from embezzlement statutes and a brief reference to a Kentucky case involving malicious prosecution, whose examination will show a distinct factual difference. Nothing in the opinion links defendant with the elements of a malicious prosecution situation, and the only conclusion reachable is a remote inference that, because we reverse the trial court, defendant must have been guilty of something,—what, we don't know. Under such circumstances few would be willing to sign a criminal complaint even though they might know and it might be quite apparent that an offense had been committed and the accused the easily identifiable one who did it.

It was made clear in Uhr v. Eaton, 95 Utah 309, 80 P.2d 925, 928, that:

"It is the duty of a complainant to make a full, fair and complete disclosure of the facts within his knowledge to the public prosecutor, and also all facts which he had reasonable ground to believe existed at the time of making the statement, or all facts which he could have ascertained by reasonable diligence, and that, having done so, he can successfully defend, by reason of such disclosure and the acting on the advice received thereon, any malicious prosecution action brought against him."

There is nothing in the main opinion demonstrating that defendant did not satisfy this defensive test. The judgment should be affirmed.