[Crim. No. 3424. Second Appellate District, Division One.— March 31, 1941.]

THE PEOPLE, Respondent, v. EDWIN CASAGRANDA, Appellant.

Ward Sullivan for Appellant.

Earl Warren, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was convicted by a jury of the offense of child stealing (defined by section 278 of the Penal Code), as charged in an information, to wit: that he wilfully, unlawfully, feloniously, maliciously, forcibly and fraudulently took and enticed away a five year old boy with intent to detain and conceal such child from his parents. Appellant admitted a prior conviction of the crime of larceny from the person, and prosecutes this appeal from the verdict of the jury finding him guilty of the crime charged, from the judgment of conviction, and also from the order denying his motion for a new trial.

The testimony of two witnesses for the prosecution was to the effect that in the afternoon of July 15, 1940, the child James was seen in company with appellant in the neighborhood where the parents of the child resided; that one of these witnesses was acquainted with the parents and a discussion which he had with them that afternoon resulted in the mother reporting the matter to the police department. Just before 6 o'clock in the afternoon of that day, four police officers went to room 208 of the Herald Hotel, knocked on the door and heard a child crying. The officers were refused admission and, since the door was locked, they kicked it in. Upon entering, they found appellant partly dressed standing in the center of the room, and the child standing a few feet from him.

The parents testified they were not acquainted with appellant, had never seen him prior to his arrest, and had not given him or anyone else permission to take their child to the said hotel on that day.

Appellant, when questioned after his arrest, denied he had taken the child to his room in the hotel and stated the child followed him; further, that he was drunk and did not know what he was doing.

Officer Gowling testified that he talked to the child in appellant's presence at the time of the arrest and "the boy said the man took him up to his room and then he wanted to go home, and the door was locked and he couldn't get out." This officer also testified that appellant appeared to have been drinking but he could not say whether or not he was drunk. Officer Andrews stated that appellant admitted he committed acts of degeneracy when he was drinking, but denied having touched the child James. So far as is shown by the record, the child was unharmed but frightened.

Appellant took the stand in his own defense and testified that on July 14th, he started drinking around noon; that about 3 o'clock he went to the apartment of a Mr. Wierman where he remained drinking until about 7 o'clock when he left to call upon a woman friend, who lived in the neighborhood, but she was not at home; and that "I hung around the neighborhood then, I was drinking, and was in different beer places drinking and waiting to see if she would come home, up until about 11 o'clock. I kept drinking all evening and she didn't come home, so I decided to get a room down there close and go to see her the next day, so I went to a place, a hotel, and got a room. . . . I slept about three hours, I guess, something like that, and got up around 8 o'clock" on Monday morning, July 15, 1940, and started drinking again; that he went to call on his woman friend about noon "and she had to work and told me to go and get some sleep, and that is all I remember . . . I presume it was about 5:30, I don't know, when I woke up, the officers were striking me." He further testified that he had no recollection of having returned to the hotel that afternoon or of seeing the child James.

The witness Mauer, who said she had known appellant for about ten years, testified with regard to appellant's state of intoxication that she spent a couple of hours in his room on the afternoon of July 15th; that he appeared to have been drinking heavily and she did not believe he recognized her; that when she left at 5 o'clock that day, he "was about at the passing out stage then"; that he was lying on the bed "in a kind of a stupor" with a towel on his head; that because the day was hot the windows in his room were open; that when she went she left the door slightly open. This last bit of evidence was undoubtedly offered to corroborate appellant's statement that the child "followed" him into his room.

 Appellant urges (1) that "the court erred in refusing (his) proposed instruction to the effect that even though the jury believed he intended to conceal James . . . from his parents, they could not convict him of the offense charged unless they further believed that such intent to conceal was accompanied by an intent to detain him"; and (2) "the court erred in refusing appellant's instruction to the effect that even though the jury believed he enticed away the

child, if they believed he was at the time so under the influence of intoxicating liquor that a felonious intent could not be formed in his mind, he was entitled to a verdict of not guilty."

Appellant here maintains, in connection with his first point, that the offense of child stealing, as defined by section 278 of the Penal Code, involves three elements, to wit:

1. The taking or enticing away of a minor child;

2. A malicious intent, or the use of force or fraud in the taking;

3. An intent to detain and conceal the child from its parents; and that since the court singled out the second element of the offense in instructing the jury that "As the language of the statute is in the disjunctive it is sufficient if the proof showed that the defendant's act was either malicious, forcible or fraudulent. The prosecution is not bound to prove all three"; that he was entitled, as a matter of right, "to the requested instruction which in effect pointed out that the language of the statute, so far as the third element of the offense was concerned, namely, 'an intent to detain and conceal the child from its parents', was in the conjunctive—that both must be found to exist before the jury could return a verdict of guilty."

With respect to this subject, the following instructions were given to the jury by the trial court:

"You are further instructed that every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from his parent, guardian, or other person, having the lawful charge of such child, is a violation of section 278 of the Penal Code, a felony. (Instruction requested by Plaintiff and given.)

"The offense of child stealing as charged in the Information involves the following necessary elements:

"(a) The taking or enticing away of a minor child.

"(b) A malicious intent, or the use of fraud or force in the taking.

"(c) An intent to detain and conceal the child from its parents.

"Therefore, if, after a fair and full consideration of all the evidence in this case, you should entertain a reasonable doubt as to the existence of any one or more of these ele-

ments of the offense, it will be your duty to find the defendant not guilty. (Instruction requested by Defendant and given.)

"The word 'forcibly' as used in this statute, does not necessarily imply the use of physical force. The word 'maliciously' as used in the statute, imports a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law. The word 'fraudulently' is very broad in its meaning. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and unfair ways by which another is deceived. As the language of the statute is in the disjunctive it is sufficient if the proof showed that the defendant's act was either malicious, forcible or fraudulent. The prosecution is not bound to prove all three. The statute contains an element 'with intent to detain and conceal'. As proof of that element the jury will consider the acts and conduct of the parties, together with all the circumstances of the case both before and after the act complained of. (Instruction requested by Plaintiff and given.)"

These instructions fully and fairly informed the jury with regard to the elements involved in the offense with which appellant was charged, and since the evidence adduced at the trial herein conclusively established the fact that appellant did detain and conceal the child, no miscarriage of justice resulted from the failure of the court to give the instruction requested by appellant.

With respect to appellant's second point, the jury was instructed as to the extent to which intoxication is an excuse for crime in the words of section 22 of the Penal Code, to wit: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

Since this instruction amply covered the matter, it is clear that appellant was not prejudiced by the court's refusal to give the requested instruction upon the same subject.

The attempted appeal from the verdict is dismissed. The judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.