216 A.2d 700.

STATE *vs.* MARIE V. COLASANTI.

FEBRUARY 9, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

POWERS, J. This is a criminal complaint and warrant charging the defendant with larceny of three billfolds from the Outlet Company in Providence. The case was tried before a superior court justice, sitting with a jury, and resulted in a verdict of guilty as charged. It is before us on the defendant's bill of exceptions to the denial of her motion for a direction, to denial of her motion for a new trial, and to certain evidentiary rulings.

The evidence discloses that on December 1, 1964 defendant was shopping in the Providence store of the Outlet Company, where she purchased a pair of shoes for herself which she charged to her husband's account and ordered delivered to her home. There is conflict as to whether thereafter she visited the toy department in the basement,

but all witnesses agree that she eventually arrived at the Barbie counter on the second floor.

It is her testimony that she picked up three packages of little girls' panties, each of which contained four pairs and sold for $3 a set; that one of the packages had been opened, and taking the merchandise to a salesgirl at the cashier's desk she asked if a fresh package were available; and that while the salesgirl went to the stock room at the rear of the store to see if a fresh set could be obtained defendant returned to the Barbie counter, picked up three billfolds which she took over to the cashier's desk, and placed them with the panties. The salesgirl returned, stated that the opened package was the only one available and offered to arrange the merchandise neatly if defendant wished to purchase it.

The defendant testified that she decided to take it, and having made her purchases produced her husband's charge plate from her handbag, signed the sales slip and walked away with the merchandise which had been placed in a paper bag by the clerk; that she took the elevator down to the first floor, walked through the store and out the Weybosset street entrance; and that, after taking several steps, she was accosted by a woman who asked her to return to the store. She admitted that she did so without protest or comment.

Virginia Simmons, Edna Morrissette and Barbara Casasanta all testified that they were employed by Colbert's Detective Agency and on December 1, 1964 were assigned to duty at the Providence store of the Outlet Company. They testified that at or about two o'clock in the afternoon on the day in question they observed defendant make her way to the second floor, but their version as to the route employed differs sharply from that advanced by defendant.

The Colbert operatives testified that defendant went to the Barbie counter which contained the packaged under-

garments on one side and the wallets on the other; that defendant picked up three billfolds, took them around to the other side of the Barbie display and placed them on the underwear counter; and that she then took three packages of panties, one not packaged neatly, over to the salesgirl at the desk and entered into a conversation. Their testimony agrees with that of defendant regarding the salesgirl going to the stock room where she remained for several minutes.

They insisted, however, that during the salesgirl's absence defendant returned to the Barbie display, picked up the three billfolds from where she had placed them and put them in her handbag which, when she returned to the cashier's desk, she placed on the floor, a circumstance flatly denied by defendant. The significance of this becomes apparent when we consider the further testimony of the Colbert operatives that defendant produced her husband's charge plate from her coat pocket, thus avoiding opening her handbag.

Virginia Simmons testified that at this point she called Ralph Smith, identified as the "security officer," who joined the three Colbert operatives on the second floor. Contrasting sharply with defendant's version, Smith and the three female operatives testified that defendant did not use the elevator in descending to the first floor but walked through a fire door exit on the Garnet street side of the building and down a flight of stairs to a landing, where in full view of them she opened her handbag and transferred the billfolds to the paper bag in which the packages of panties had been placed by the salesgirl. They further testified that she then continued down the stairs to the ground floor where she was followed by the Colbert operatives, Smith returning to his office in the basement.

Edna Morrissette testified that she followed defendant

out the Weybosset street entrance and asked her to return to the store.

It then appears that defendant, escorted by the three women, was conducted to security officer Smith's office where he asked her to empty the contents of the paper bag. She did so, disclosing the three packages of undergarments and the three billfolds. She had no sales slip to account for the billfolds as purchases and suggested that the salesgirl had neglected to include them on the sales slip which she signed. She then extended her husband's charge plate and offered to have them charged with her other purchases. Security officer Smith, however, refused and advised defendant that she would be charged with having stolen the billfolds.

The salesgirl who waited on defendant testified that there were no billfolds with the three packages of panties and further corroborated the other witnesses' testimony that defendant had produced the charge plate from her coat pocket and not her handbag as defendant insisted.

Ralph Smith, in addition to his testimony corroborating the other witnesses' account of defendant's actions, testified that he had been in the employ of the Outlet Company since October 1957 "in charge of security."

The buyer for the teen department identified the three billfolds placed in evidence by the state and testified that they were on sale December 1, 1964, having a retail value of $1 each.

After both sides had rested, defendant's motion for a directed verdict was denied and the jury returned a verdict of conviction.

Although defendant preserved numerous exceptions in prosecuting her bill, she has briefed and argued only four. Under our well-settled rule only these exceptions will be considered. *Winslow* v. *Einhorn*, 62 R. I. 1.

. The first such exception is to the denial of her motion for a directed verdict. In support thereof she does not make the usual contention, namely, that there was no evidence to be submitted to the jury. Rather, she argues that the complaint is defective in that it does not allege a legal entity from the possession of which the billfolds were unlawfully taken.

The complaint recites "* * * that at said Providence, in said County, on the 1st day of December A. D. 1964, with force and arms, Marie V. Colasanti alias Jane Doe: of said Providence, laborer Feloniously steal, take and carry away from the possession of the Outlet Company, three billfolds being their property, all to the value of $2.25, on to wit; December 1st, 1964."

The defendant contends that the words "Outlet Company" do not establish that the wronged possessor was a corporation, partnership, association or an individual having a legal entity; that there is no evidence from which a legal entity can be inferred; and, absent such allegation and proof, that the complaint is legally insufficient to support a conviction. In aid of these contentions she cites decisions in Illinois, Missouri, Massachusetts and other jurisdictions where it has been held that the state must allege and prove the nature of the legal entity from which the goods were taken.

It is true that at common law these were essential elements in the crime of larceny, the reason being that it was thought necessary to the preparation of one's defense. This rule, however, has been greatly relaxed in a majority of the states and Rhode Island is among them. Minimal reflection suffices to establish that the exact nature of the legal entity of the wronged possessor is of no moment, if it be proved that the entity, whatever its character, was in fact in possession of the chattel unlawfully taken.

In the instant case there is ample proof of such pos-

session. The testimony of the state's witnesses readily demonstrates that the billfolds were in the possession of a mercantile establishment. Indeed, defendant, in her testimony, freely acknowledges two purchases made by her on December 1, 1964 as well as some on previous occasions.

The general assembly in 1915 discarded the common-law rule by the adoption of what is now G. L. 1956, §12-12-10, wherein it is provided:

"A defendant shall not be acquitted or discharged on the ground of variance between the allegation and proof if the essential elements of the crime are correctly stated in the complaint or indictment, unless he is thereby prejudiced in his defense. He shall not be acquitted or discharged by reason of an immaterial misnomer of a third party, by reason of an immaterial mistake in the description of the property or the ownership thereof, by reason of failure to prove unnecessary allegations in the description of the crime, or by reason of any other immaterial mistake in the complaint or indictment."

Even so, defendant further contends that the common-law rule has been followed in this jurisdiction, citing *State* v. *Murphy*, 17 R. I. 698, *State* v. *Winder*, 22 R. I. 177, and *State* v. *Main*, 94 R. I. 338.

The first two cases cited were decided prior to the 1915 statutory relaxation of the common-law rule, but the *Main* case is of recent vintage. However, in all three cases the indictments contained specific allegations which thereupon became the burden of the state to prove. On this fact, those cases are readily distinguishable and not controlling.

The thrust of defendant's argument on her exception to the denial of the motion for a new trial is that the trial justice misconceived the evidence on which he based his decision that there was competent evidence from which the jury might reasonably infer that the "Outlet Company" was a legal entity. It is obvious from our discussion as to the lack of merit in her argument on the issue of a directed ver-

438

dict that further discourse of the same issue would serve no useful purpose.

The defendant's other two exceptions are to evidentiary rulings made during the course of the trial. The first was to the refusal by the trial justice to strike a portion of an answer made by Virginia Simmons during her examination by the state. She was asked to describe the nature of her duties with the detective agency and replied, "We are assigned to various stores in the city to look out for any shoplifters."

Counsel for defendant moved to strike the reference to "shoplifters" on the ground that defendant was not charged with shoplifting and the reference thereto was prejudicial. The trial justice denied the motion but immediately explained to the jury that defendant was not charged with shoplifting and, in our judgment, effectively eliminated any question of prejudice if error there were. *Korn* v. *Congdon*, R. I., 136 Atl. 11; *Ralph* v. *Taylor*, R. I., 85 Atl. 941.

Finally defendant contends that it was prejudicial error for the trial justice to deny her motion to strike the witness Virginia Simmons' reference to Ralph Smith as "the security officer." In her testimony Mrs. Simmons had related the conduct of defendant as she had allegedly observed it, including that of having observed defendant place the billfolds in her handbag and, in reply to a question, stated that she had made a telephone call. Asked to identify the person called, she replied, "I called Mr. Smith, the security officer."

The defendant argues that the words sought to be stricken were in the circumstances, uncalled for and created an impression on the jury prejudicial to her. In the light of Mrs. Simmons' testimony as to the defendant's behavior which prompted the telephone call, it is difficult to follow the defendant's reasoning. However, assuming without deciding that prejudice did inhere, the subsequent testimony of Mr.

Smith renders the question moot. Asked about the nature of his employment, he replied that he was "in charge of security." No motion was made to strike this response and the jury at that time came into possession of the allegedly prejudicial information without objection. See *D'Ambra* v. *Ohanian*, 77 R. I. 218, and *Child* v. *Greene*, R. I., 160 Atl. 920.

All of the defendant's exceptions briefed and argued are overruled, and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent*, Attorney General, *Corinne P. Grande*, Special Assistant Attorney General, for State.

*John M. Booth*, for defendant.