414 P.2d 153

**STATE of Arizona, Appellee,**

**v.**

**William BAKER, Appellant.**

**No. 1616.**

Supreme Court of Arizona.

In Banc.

May 11, 1966.

Darrell F. Smith, Atty. Gen., and Gary K. Nelson, Asst. Atty. Gen., Robert K. Corbin, Maricopa County Atty., for appellee.

Wade Church, Phoenix, for appellant.

BERNSTEIN, Vice Chief Justice.

Appellant, hereinafter called defendant, appeals from a conviction of robbery entered by the Superior Court of Maricopa County sitting with a jury.

We must view the evidence and reasonable inferences therefrom in a manner which most favorably supports the verdict. State v. Galbreath, 97 Ariz. 361, 400 P.2d 842. Accordingly, the facts are as follows. During the early morning hours of October 10, 1964, defendant and two others decided to go to a restaurant in Scottsdale. They saw the complaining witness Ritchie walking along Indian School Road. They stopped the automobile and defendant asked Ritchie if he had any money. Ritchie said no and defendant asked him if he could have all the money he found on him. Ritchie again replied in the negative whereupon defendant unsuccessfully tried to force Ritchie into the automobile. Defendant and his friends drove away, then returned and persuaded Ritchie to voluntarily get into the car on the pretext of taking him where he wanted to go. After they began moving, defendant ordered Ritchie to empty his pockets and slapped him several times when he refused to comply. Ritchie then turned over his wallet, cigarette lighter, change, keys and jacket to defendant and eventually escaped. A complaint was filed, preliminary examination held and defendant was convicted of robbery. This appeal followed.

Defendant's first argument is that the trial court erred in refusing to allow cross examination of the prosecuting witness Ritchie as to "whether anyone tried to

induce him to bring these charges, or to testify." The ruling was as follows:

"Q Now, you (Ritchie) didn't want to bring these charges against Mr. Baker and Mr. Boyd, did you?

MR. ELDRIDGE (Prosecution): Objection.

THE COURT: Sustained."

Defense counsel did not make an offer of proof nor did he ask for the particular grounds supporting the objection. Defendant was not prejudiced by the ruling because the question was later answered by Ritchie in response to defense counsel's examination:

"Q It was some four days after October 10th until an actual complaint was filed in this matter. Could you tell us why there was a four day lapse of time?

"A Because I was scared. I didn't know what he was thinking of, or I didn't know what was going to happen.

"Q Did anyone pressure you to bring this complaint?

"A No.

MR. HAMMOND: Thank you, I have no further questions."

   \*    \*    \*    \*    \*    \*

"MR. HAMMOND: Q You said you told Vickie—or rather you called Baker some names in Vickie's pres-ence because Mr. Baker had pushed you around before, is that right?

"A He always bothered me.

"Q You were a little bit mad at him then?

"A Yes.

"Q That is why you called him names?

"A Yes.

"Q Is that why you brought charges against him?

"A No, just what happened that night, October 10th, just what happened, that is the only reason.

"MR. HAMMOND: I have no further questions."

Further, we note there was testimony before the jury impeaching Ritchie. Co-defendant Boyd testified that he, defendant and Ritchie had coffee together a short time after the preliminary examination. Boyd testified that part of the conversation went as follows:

"A No, he (Ritchie) just mentioned something that he felt real bad about it, that his conscience was bothering him about it, that he didn't think it was just at all, and that his parents had put pressure on him to press these charges."

It is clear that defendant was not denied his right to cross examine the complaining witness, Ritchie, on the issue of whether he was pressured into filing the complaint.

## 342

Defendant next urges that the court erred in rereading a portion of the instructions to the jury on "aiding and abetting" and then proceeding to comment thereon by quoting from a decision of this court. The pertinent part of the transcript reads:

"THE COURT: Mr. Foreman, I understand that you wanted some clarification on some of the instructions, is that correct?

"THE FOREMAN: That is correct.

"THE COURT: Just tell me what it is that you want.

"THE FOREMAN: What constitutes aiding and abetting.

"THE COURT: I see. Is that the only point the jury is interested in at this point?

"THE FOREMAN: Yes, Sir.

"THE COURT: Well, Ladies and Gentlement, (sic) the Court has instructed on aiding and abetting, and I gave you this instruction and I will read it, and then I will attempt to clarify it by giving you the latest pronouncement of our Supreme Court on the subject.

"You will recall I instructed you that for one person to aid and abet another in the commission of a criminal offense means to knowingly and with criminal intent, aid, promote, encourage or instigate by act or counsel, or by both act and counsel, the commission of such offense.

"Recently, our Supreme Court has had this to say about it: To aid and abet means simply to assist in the commission of an act, either by an active participation in it, or in some manner advising or encouraging it.

"Now, does this answer your question? Is there anything further?

"THE FOREMAN: No. Sir.

"THE COURT: Let me ask you Mr. Foreman, how do you stand? Don't tell me how you voted and the results of your voting, but have you reached a verdict in any particular in respect to one, or at least one defendant at this time?

"THE FOREMAN: We have reached one verdict, yes, Sir."

\* \* \* \* \* \*

"THE COURT: \* \* \* I want to caution you again that the fact that I have answered your question about this instruction, that it does not mean that I intend to emphasize this particular instruction, and you should consider all of the instructions as a whole, and regard each of them in the light of all the others I think you realize that."

Defendant admits that neither the rereading of an instruction nor quoting from a case necessarily results in error. Cf. State v. George, 95 Ariz. 366, 390 P.2d 899; Hightower v. State of Arizona, 62 Ariz. 351, 158 P.2d 156; Rules 281, 282, Rules of Criminal Procedure, 17 A.R.S.

The case was tried on the theory that defendant committed the robbery and that codefendant Boyd was an aider and abettor.

From the transcript quoted above, it is obvious that the jury had already decided the question of defendant's guilt. Hence, defendant could not have been prejudiced when the trial court reread the instruction and quoted from a decision of this court— probably State v. Roberts, 85 Ariz. 252, 336 P.2d 151 which was elaborated upon in State v. Bearden, 99 Ariz. 1, 405 P.2d 885.

■ Defendant next argues that the trial court erred in refusing to grant a new trial on the ground of newly discovered evidence. Counsel submitted an affidavit of defendant's father which stated that the father had not been asked to be a witness at his son's trial. The affidavit then states that the father met the complaining witness, Ritchie, a few days after the complaint was filed at which time Ritchie said his parents and the police made him bring the charge, that he wanted to drop it and that he "had used the robbery storey (sic) as an excuse for coming home late on the night of (sic) the alleged robbery occurred." We are not told why the father was not called as a witness at the trial.

■ Generally, a new trial will not be granted to permit the introduction of testimony of a witness whose identity was known by the moving party at the time of the original trial. State v. Schroeder, 100 Ariz. 21, 409 P.2d 725; Rule 310.3 Rules of Criminal Procedure 17 A.R.S.

The testimony of the father could be used to impeach Ritchie at a new trial only if he repeated the testimony he gave at the first trial. The impeaching nature of the father's testimony would be to establish a prior but unsworn inconsistent statement of Ritchie and show that his version of the facts could not be believed. Such evidence would be cumulative and will not ordinarily justify a new trial. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245.

There are two decisions factually similar to the case before us. In Indian Fred v. State, 36 Ariz. 48, 282 P. 930 and State of Arizona v. Peters, 60 Ariz. 102, 131 P.2d 814 new trial motions on the ground of newly discovered evidence were denied where the evidence was in the form of affidavits stating that state witnesses had given statements prior to trial which were inconsistent with their testimony at trial. In the case before us, the trial court did not err in denying defendant's motion for a new trial.

■ Finally, defendant contends the verdict is contrary to the weight of the evidence. We have carefully examined the record and find that the contention is without merit.

Affirmed.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD and McFARLAND, JJ., concurring.