438 P.2d 776

**The STATE of Arizona, Appellee,**

v.

**James I. SCOFIELD, Appellant.**

**No. 2 CA–CR 95.**

Court of Appeals of Arizona.

March 22, 1968.

Rehearing Denied April 17, 1968.

Review Denied May 14, 1968.

Darrell F. Smith, Atty. Gen., Terry M. Pierce, Asst. Atty. Gen., William J. Schafer III, County Attorney, Pima County, Tucson, for appellee.

Douglas C. Howard, Tucson, for appellant.

MOLLOY, Judge.

This is an appeal from a conviction of theft by embezzlement of a car rented by the defendant from a car-rental agency.

The defendant entered into a rental contract with "Econo-Car of Tucson" on July 15, 1966, of a 1966 Plymouth Belvedere. The written contract provided that the car would be returned "Not later than: 7/25/66 2:30 PM." There was no deposit paid on the rental, the defendant's credit being accepted by the rental agency on the basis of a credit card issued by another car-rental system. The written contract indicated the car was to be used in the States of Arizona and California only.

When the car was not returned as provided by the contract, the rental agency went to the address given by the defendant and found he had moved from that address a day or two after renting the car without leaving a forwarding address. No further information as to the whereabouts of the car or the defendant was had until the car was found abandoned on the streets of Lawton, Oklahoma, on September 9, 1966.

The statute under which the defendant was charged provides that a person is guilty of theft by embezzlement who "[h]as leased or rented a motor vehicle * * * and who *fraudulently* fails to return the motor vehicle * * * to its owner within ten days after the lease or rental agreement has expired." (Emphasis added.) A.R.S. § 13–682(4) (as amended).

The defendant took the stand in his own defense. He testified that, when he rented the car, he was a week behind on the rent for the house he was occupying in Tucson, and that, within a day or two after renting this motor vehicle, he drove it to Fort Worth, Texas. He remained in Fort Worth until the middle of August, and then moved to Wichita Falls, Texas. He continued to use the car, though his wife

had a car which he used part of the time. He made no attempt to notify the rental agency, but relied, he testified, upon a statement made to him at the time he rented the car that it was not essential he return the car on the tenth day. On September 9, hearing there was a warrant out for his arrest, he took the car to Lawton, Oklahoma, and tried to turn the car into local car-rental agencies who refused to accept the car. He then left the car parked on the street, and the key at a hotel in the city. The defendant testified he had been informed at the time he rented the motor vehicle that he would be liable for arrest if he did not return the car to Tucson, Arizona, and, being financially unable to do so, decided to use the car in Texas instead and to later abandon the car in Oklahoma. The defendant further justified himself in that he had told the car agency he might need the car to go to Texas but that this was omitted from the contract. The two persons handling this rental for the rental agency testified the only mention of an out-of-state trip was one to California and that it was made clear the car must be returned by the tenth day.

■ Numerous assertions of error are raised. Several of such assertions overlap and others are not argued. As to the latter, we regard the failure to argue the assertion to be an abandonment, State v. Bird, 99 Ariz. 195, 407 P.2d 770 (1965), cert. denied 384 U.S. 1025, 86 S.Ct. 1977, 16 L.Ed.2d 1030 (1966). Of the assertions of error which are argued, we believe they may be disposed of by answering five fundamental questions.

### IS THE WORD "FRAUDULENTLY" SUFFICIENTLY DEFINITE IN MEANING?

The contention is made that either the subject statute is rendered unconstitutionally vague by the use of the word "fraudulently" or else there is a failure of proof in that there is no showing of the nine classic elements of fraud, i. e., a misrepresentation with knowledge of its falsity, et cetera. See Poley v. Bender, 87 Ariz. 35, 39, 347 P.2d 696, 698 (1960).

■ Constitutional parameters permit the legislature wide discretion in selecting conduct to be penalized by criminal sanctions. The determination that an act alone, without criminal intent, shall constitute a crime is within this power. Borderland Construction Co. v. State, 49 Ariz. 523, 68 P.2d 207 (1937).

In evaluating constitutionality:

"It is our duty to uphold an act if, on any reasonable theory, a construction may be given thereto which would make it constitutional." McManus v. Industrial Commission, 53 Ariz. 22, 28, 85 P.2d 54, 56 (1938);

and see State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); and State v. Locks, 91 Ariz. 394, 372 P.2d 724 (1962).

In the case of the instant statute, the act selected for possible sanction is at least as definite and certain as the average criminal statute. The *actus reus* is the failure to return a rented vehicle within ten days after the rental agreement has expired. If this statute fails for indefiniteness, it is in the expression of the mental state, or *mens rea,* which is designated as being a necessary element.

■ That the words selected by the legislature to describe this criminal intent are not inappropriate in an embezzlement statute is indicated by general law:

"Ordinarily, to constitute embezzlement, there must be a *fraudulent* intent to deprive the owner of his property, and appropriate it." (Emphasis added.) 29A C.J.S. Embezzlement § 12a, at p. 35.

See also 29A C.J.S. Embezzlement § 11, at pp. 27–28; 26 Am.Jur.2d Embezzlement § 19, at 570 and § 22 at 572.

These encyclopedic generalizations digest a myriad of decisions which make use of the word "fraudulent" or "fraudulently" in referring to the intent which must accompany an act of embezzlement. If the embezzlement statute itself does not ex-

pressly refer to such an intent, the courts will usually read the requirement into the law. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Shaw v. United States, 357 F.2d 949, 957, 174 Ct.Cl. 899 (1966); United States v. Summers, 19 F.2d 627 (W.D.Va.1927); People v. Riggins, 13 Ill.2d 134, 148 N.E.2d 450 (1958); Commonwealth v. Shilladay, 311 Ky. 478, 224 S.W.2d 685 (1949); State v. Hanna, 224 Or. 588, 356 P.2d 1046 (1960); 26 Am.Jur.2d Embezzlement § 19, at 570; 29A C.J.S. Embezzlement § 12a, at pp. 35–36; Annots., 13 A.L.R. 142, at 145, and 116 A.L.R. 997, at 999.

This is not always true, however, for in State v. Prince, 52 N.M. 15, 189 P.2d 993 (1948), a new embezzlement statute was struck down as unconstitutional because it omitted from its context the word "fraudulently." The former embezzlement statute, which included this word in its definition, was held to be still effective in that state. The reason given by the court for holding the new statute to be unconstitutional was that the *omission* of the word "fraudulently" rendered the statute " \* \* uncertain in its meaning, vague and indefinite." (189 P.2d at 995.) We thus have the highest appellate court of a sister state solemnly adopting the antithesis of the defendant's contention here.

A reading of many cases dealing with the crime of embezzlement will indicate that the courts often use the words "fraudulently" and "fraudulent intent" as synonyms for "criminal intent." See, e. g., Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952); United States v. Ludwig, 177 F.Supp. 365, 367 (E.D.Pa.1959); People v. Ranney, 213 Cal. 70, 1 P.2d 423 (1931); People v. Riggins, 148 N.E.2d at 452; Commonwealth v. Shilladay, 224 S.W.2d at 687; and State v. Hanna, 356 P.2d at 1048.

■ When the law attempts to define a state of mind, neither psychiatry, nor law permits precision. Cf. State v. Cano, 103 Ariz. 37, 436 P.2d 586 (1968). In determining degree of certainty required by due

process, the courts should take into account the legislature's difficulty in expressing particular concepts. Cf. Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); 21 Am. Jur.2d Criminal Law § 17, at 98; 22 C.J.S. Criminal Law § 24(2), at pp. 62–74.

No case has been called to our attention which has struck down a statute because a necessary element of the crime is "criminal intent," "feloniously" or "fraudulently." If such statutes be unconstitutional, then the whole structure of our criminal law is in jeopardy. Our law has never settled on a definite connotation for "criminal intent" or *"mens rea,"* regarded by most publicists as an essential of "all true crime." Perkins, A Rationale of Mens Rea, 52 Harv.L.Rev. 905, 909 (1939). Compare Burdick, Law of Crime § 129, at 153; Hall, General Principles of Criminal Law, ch. III (2d ed. 1960); 1 Russell on Crime, at 31–36 (12th ed. Turner 1964); and see State v. Cutshaw, 7 Ariz.App. 210, 437 P.2d 962 (1968), note 13.

Some courts have taken the view that the intent necessary to constitute the crime of embezzlement is the same *animus furandi* as that required for larceny. State v. Holdren, 143 Mont. 103, 387 P.2d 446 (1963); State v. Hanna, 356 P.2d at 1047. This court recently held that the intent to permanently deprive the owner of his property was a necessary element of grand theft. State v. Wood, 7 Ariz.App. 22, 435 P.2d 857 (1967).

■ ·However, we believe there is a fundamental difference between the crime of larceny and embezzlement that creates a difference in the intent required to constitute the crime. Historically, larceny and embezzlement have separate origins. The first is a common-law crime, 32 Am.Jur. Larceny § 2 at 882; 52 C.J.S. Larceny § 1, at p. 779; while the latter is a creature of statute. 26 Am.Jur.2d Embezzlement § 1, at 549; 29A C.J.S. Embezzlement § 2, at p. 4. The gist of the crime of embezzlement is a breach of trust. State v. Russell, 265 S.W.2d 379, 44 A.L.R.2d 617 (Mo.

1954) (car-rental case); 26 Am.Jur.2d Embezzlement § 3, at 551–52; 29A C.J.S. Embezzlement § 10b. Contrary to the general law pertaining to larceny, 32 Am.Jur. Larceny § 15, at 901; 52 C.J.S. Larceny § 46, at p. 840, it is no defense to a charge of embezzlement that the trustee who has converted property to his own use intends sometime in the future to return it. 26 Am.Jur.2d Embezzlement § 20, at 571; 29A C.J.S. Embezzlement § 12(c), at pp. 38–39.

It seems very evident here that the legislature did not mean to select an intent to permanently deprive as the critical state of mind. The language selected (" * * fails to return * * * within ten days * * *.") would become largely meaningless if this provision be so construed and this is made particularly clear when a complementary statute is considered:

> "In a prosecution for theft by embezzlement, the fact that the accused intended to restore the property embezzled is not a defense or ground for mitigation of punishment, if the property has not been restored before a complaint has been laid before a magistrate charging the commission of the offense." A.R.S. § 13–685.

In common usage, the word "fraud" encompasses much more than the tortious fraud known to the bench and bar:

> "Fraud is a generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to get an advantage over another." Wells v. Zenz, 83 Cal.App. 137, 256 P. 484, 485 (1927);

and see People v. Casagranada, 43 Cal.App. 2d 818, 111 P.2d 672 (1941); and People v. Simmons, 12 Cal.App.2d 329, 55 P.2d 297 (1936).

In writing this statute, the legislature selected a word not uncommon in the English language. As with any other word, individuals may differ as to the exact meaning they ascribe to this word in this context, but meanings given by reasonable persons with average facility with our language will have common ground in concepts of "cheating," "tricking" and "wrongfully depriving" an owner of property. As we have seen, the judiciary customarily uses as tools of its trade verbiage with no more definite a meaning. We see no more need to particularly define this word "fraudulently" in jury instructions than to define "criminal intent," which courts consistently tell juries is indispensable for conviction.

■ We hold the statute is sufficiently clear to meet due-process standards and that no fundamental error was committed by the court's failing to define the word "fraudulently" for the jury.

## WAS THERE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION?

■ The defendant attacks the sufficiency of the evidence on several bases. In evaluating such contentions, this court must take the evidence in the light most favorable to upholding the jury verdict rendered below. State v. Baker, 100 Ariz. 339, 414 P.2d 153 (1966).

■ Initially, we find sufficient evidence for the jury to have found that the defendant "fraudulently" failed to return this vehicle. Once the State had produced evidence showing the defendant had left the residence address given to the car-rental agency without leaving a forwarding address, and that the car was not returned within the time limit set by the statute but was abandoned in Lawton, Oklahoma, outside of the area to which the contract of rental restricted its use, we hold the State had established a prima facie case sufficient to go to the jury on the issue of fraudulent intent. State v. Russell, 265 S.W.2d 379, 382, 44 A.L.R.2d 617 (Mo. 1954); and see 29A C.J.S. Embezzlement § 11, at p. 28.

■ The explanation given by the defendant does not conclusively refute this prima face case. In some regards, his testimony reinforces the State's case. His

testimony that, at the time he rented the car, he was without funds to pay his rent and without employment and that he continued to use the automobile though he had no funds to pay for its rental, is indicative of an intention to wrongfully deprive this agency of this car and its rental. There is a complete absence of testimony of accidental occurrences which might excuse the failure to return. We hold there was a jury question as to whether the failure to return in this case was fraudulent.

The defendant challenges the sufficiency of proof insofar as showing that "Econo-Car International, Inc. of Tucson" was a legal entity capable of owning this automobile. The defendant relies upon Phelps v. State, 25 Ariz. 495, 219 P. 589 (1923), in which our Supreme Court held, in an embezzlement prosecution, it was essential to allege and prove that the alleged victim of that offense, Yellow Jacket Taxi Company, was a corporation or other entity capable of owning property. (25 Ariz. at 504, 219 P. 589.)

*Phelps* is distinguished, questioned but not overruled, in Gibbs v. State, 37 Ariz. 273, 277, 293 P. 976, 74 A.L.R. 1105 (1930). Since *Phelps,* our Supreme Court has adopted a complete new set of rules for criminal procedure, and the State is operating under a new "theft" statute, A.R.S. § 13-661 et seq., patently intended to eliminate technical defense. See State v. Bradley, 3 Ariz.App. 70, 412 P.2d 67 (1966). In the new rules, provisions pertaining to variance and amendment were materially liberalized. Of particular interest is the following:

"B. No variance between the allegations of an indictment, information or bill of particulars, which state the particulars of the offense charged, whether amended or not, and the evidence offered in support thereof shall be ground for the acquittal of the defendant. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such variance

to conform to the evidence." Rule 145, R.Crim.P., 17 A.R.S. (Originally adopted by the Supreme Court as Rule 182(2), R. Crim.P., and placed in 1939 Code as § 44-748(2).)

In view of this rule and many other provisions in these rules which indicate a desire to eschew formalism, see particularly Rules 109-153, 17 A.R.S., it is our opinion that *Phelps* no longer represents the law of this state.

At the time of the enunciation in *Phelps,* there was a split of authority in this country on this subject. In a compilation of annotations of case law, Arizona was listed by reason of *Phelps,* as being in that column which followed old English law:

"Under the old rule which prevailed in England, requiring great particularity in the description of persons, it has been held in some cases that in a prosecution for larceny or embezzlement it is necessary to allege that the owner of the property, if not a natural person, is a corporation or otherwise a legal entity capable of owning property." 88 A.L.R. at 485.

At the time of this annotation there was a substantial body of law taking a contrary view. See Annot., 88 A.L.R. 488, 490, and 493.

Since *Phelps,* the majority of decisions interpreting rules of criminal procedure similar to our own hold that the old formalistic rule is no longer pertinent and that it is usually not necessary to allege or prove corporate existence or the ability to own property on the part of an alleged victim in a larceny or embezzlement. The following is illustrative of this view:

"The name of the owner of property stolen is material only to the extent it serves a descriptive purpose. Another is to show that it is not the property of the accused, and that the accused may know whose property he is alleged to have stolen so that he may be prepared to meet or refute the charge at the trial. And, where the identity of the alleged owner is sufficiently established and the defendant is not deceived or misled to

his prejudice, no error results. Pownall v. People, 135 Colo. 325, 311 P.2d 714, 52 C.J.S. Larceny § 79, p. 882.

"Here the corporate existence of 'The Continental Oil Company' was not a factor in the description either of the owner of the stolen property or of the person by whom it was stolen. The defendant could not have been misled by the allegation of corporate entity, nor prejudiced by failure of the prosecution to prove it. The defendant is fully protected against further prosecution for the same offense, and his substantial rights were in no manner adversely affected. Under such circumstances the failure to prove the corporate status of the victim was an immaterial variance contemplated by C.R.S. '53, 39–7–17, and not prejudicial to the accused." Straub v. People, 145 Colo. 275, 358 P.2d 615, 616–617 (1961).

To the same effect are: People v. Torp, 40 Cal.App.2d 187, 104 P.2d 542, 544 (1940); State v. Jackson, 411 S.W.2d 129 (Mo. 1967); State v. Sims, 395 S.W.2d 445 (Mo. 1965); State v. Colasanti, 216 A.2d 700 (R.I.1966); contra, Sippio v. State, 227 Md. 449, 177 A.2d 261 (1962); State v. Thornton, 251 N.C. 658, 111 S.E.2d 901 (1960).

Under the allegations of this information, there is no confusion as to the identity of the motor vehicle which the defendant is charged with having embezzled from "Econo-Car International Inc. of Tucson." The proof is uncertain as to whether this was a separate corporation or merely a trade name under which an individual by the name of Earl J. Mort did business. As to ownership, Mr. Mort testified that the car in question was one he had leased from " * * * Chrysler leasing corporation. * * *" But, whoever or whatever owned this automobile, it is crystal clear that the defendant did not and that this charge relates to a particular motor vehicle which he rented from a lessor doing business under the name indicated in the information. We

hold that if there was a variance from the information or a failure of proof, it was as to matters basically immaterial.

■ The defendant further complains there is no evidence in this record of the value of the subject vehicle. Applicable statutes provide that the punishment of "theft by embezzlement" shall be the same as for theft of property, A.R.S. § 13–688, and that theft of any motor vehicle shall be punished as "grand theft," a felony. A.R.S. § 13–663. In view of these statutes, we see no necessity to prove the value of this vehicle.

## HAD THIS LEASE "EXPIRED" MORE THAN TEN DAYS PRIOR TO THE FILING OF A CRIMINAL COMPLAINT?

■ The lease agreement provided that in the event the rentee should fail to return the vehicle within six hours after return date, his "liability" would continue at the rate of $20 per day plus mileage. When the car was recovered by the rental agency after being found abandoned in Lawton, Oklahoma, the rental agency computed the amount owing on the rental, in accordance with its standard charges, based on weekly, daily and hourly rates, which were less than $20 per day. This computation was taken to the date of the actual return of the vehicle to Tucson, Arizona, on September 19, 1966.

From these facts, the defendant argues that this rental agreement did not "expire" until September 19, 1966, and that the complaint was filed before the lease expired.[1] No authority is cited to support this contention, and we decline to adopt it. We do not believe that the word "expired" in the subject statute is intended to have any technical meaning. We see no evidence here of any intent on the lessor's part to extend this lease, but merely to make a charge for the use of this automobile in an attempt to be compensated. That the rental agency declined to impose the pen-

1. The criminal complaint was filed on August 17, 1966.

alty provided by the contract but instead charged normal rates, in the absence of anything more, does not mandate the conclusion that this lease did not "expire" on July 25, 1966, the date on which the defendant agreed to return this car "[n]ot later than. * * *"

## DOES ARIZONA HAVE JURISDICTION OVER THIS OFFENSE?

The defendant questions whether "venue" was properly laid in Arizona. No citation of authority is given, but the argument is made:

> "If any intent to commit a crime ever existed, it existed some place outside the State of Arizona. * * *"

 Generally, the State of Arizona has no jurisdiction over offenses committed outside of its territorial limits. 21 Am.Jur. 2d Criminal Law § 383, at 403–04; 22 C.J.S. Criminal Law § 133, at p. 353; and see State v. Jacobs, 93 Ariz. 336, 380 P.2d 998 (1963). However, it is also generally accepted that if the requisite elements of the crime are committed in different jurisdicton, any state in which an essential part of the crime is committed, may take jurisdiction, 21 Am.Jur.2d Criminal Law § 385, at 404, and this is particularly true as to the state in which the crime is consummated. 22 C.J.S. Criminal Law § 133b, at p. 355. See Commonwealth v. Thomas, 410 Pa. 160, 189 A.2d 255, 5 A.L.R.3d 879 (1963), and cases cited therein.

As we have seen, the essence of the crime of embezzlement is a breach of trust. The right of the legislature to make the offense of embezzlement punishable where the bailment occurred has been upheld. Richburger v. State, 90 Miss. 806, 44 So. 772 (1907); People v. Smith, 2 Misc.2d 344, 153 N.Y.S.2d 150 (1956). In this case, the legislature has carefully selected as the *actus reus* the failure to return the leased chattel thus clearly selecting something which negatively occurred[2] only in this state. The intent of the legislature being clear, and no constitutional prohibition being apparent, we hold that jurisdiction of this alleged offense was properly laid.

## DID THE TRIAL COURT COMMIT REVERSIBLE ERRORS IN THE ADMISSION OR REJECTION OF EVIDENCE?

The defendant complains of the failure to strike testimony admitted without objection from detectives of the Wichita Falls, Texas, and Lawton, Oklahoma police departments on the basis that this testimony did not relate to the particular automobile which is the subject of this criminal information. We find no merit to this contention. An examination of their testimony makes it clear that they were testifying as to the rented car.

 The defendant complains of the admission into evidence of computations placed upon the original contract between the defendant and the car-rental agency after the defendant had signed the contract. These figures indicated a total of $1,334.88 was owing and unpaid by reason of this rental. It was established in the evidence that this computation was placed upon this contract in the ordinary course of business of the rental agency and that the notations were made at the time of the occurrence of

2. We find nothing which would lead us to believe that a legislature may not place criminal sanctions on a failure to perform an act which there is a legal or moral duty to perform. A criminal statute punishing failure to support (A.R.S. § 13–801) remains without constitutional challenge. In Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), it was held that a person cannot, consistent with due process, be criminally prosecuted for failure to perform a duty created by the criminal statute itself (register as a "convicted person"). The opinion excludes from its holding situations in which (1) "actual knowledge of the duty * * * or proof of the probability of such knowledge" exists and (2) a "subsequent failure to comply" with the statute is evident. Compare United States v. Juzwiak, 258 F.2d 844 (2d Cir. 1958), which held criminal sanctions proper for failure to comply with a registration statute, where a "probability" of knowledge on the defendant's part is present.

the events recorded thereon. We hold that this evidence had some bearing upon the issue of the defendant's alleged fraudulent intent and that it was properly admitted under the business records exception to the hearsay rule. Rule 272, Rules of Criminal Procedure, 17 A.R.S., and Rule 44(q), Rules of Civil Procedure, 16 A.R.S.

■■■ The defendant complains his counsel was unreasonably limited in cross-examination. On one occasion, counsel was not permitted to cross-examine in a certain factual area, but subsequently, substantially the same question was asked again and answered by the witness. Under these circumstances, we see no reversible error. State v. Musgrove, 2 Ariz.App. 505, 410 P.2d 127 (1966), cert. denied 385 U.S. 979, 87 S.Ct. 524, 17 L.Ed.2d 441 (1966).

■■■ In a hearing outside the presence of the jury on voluntariness of the admissions made by the defendant to the Wichita Falls detective, the defendant's counsel was not permitted to elicit from the witness the substance of the purported admissions but only to cross-examine this witness on the circumstances giving rise to any such admissions.

It has been held in other jurisdictions that cross-examination of state's witnesses at such preliminary examination is limited to the issue of voluntariness of the defendant's statements sought to be admitted. Ah Fook Chang v. United States, 91 F.2d 805 (9th Cir. 1937); Silliman v. People, 114 Colo. 130, 139, 162 P.2d 793 (1945); State v. Hashimoto, 46 Haw. 183, 377 P.2d 728 (1962); Wells v. State, 236 Md. 381, 203 A.2d 912 (1964). See also 29 Am.Jur.2d Evidence § 585, at 641–43. In the first three cited cases, the trial court's refusal to allow cross-examination on or examination of the contents of a defendant's confession was upheld on appeal, the view being expressed that the contents of such statements are not material to the question of voluntariness.

A defendant's right to wide latitude in cross-examination is the rule in this jurisdiction, State v. Holden, 88 Ariz. 43, 352 P.2d 705 (1960), subject to the bounds of judicial discretion. State v. Carter, 1 Ariz. App. 57, 399 P.2d 191 (1965). This right of cross-examination is equally applicable to a preliminary examination as to voluntariness of a defendant's statement. State v. Jones, 253 Iowa 829, 113 N.W.2d 303 (1962); State v. Longmore, 178 Neb. 509, 134 N.W.2d 66 (1965).

We decline to give blanket endorsement to the law from other jurisdictions holding that there is no right in a voluntariness hearing to inquire into the nature of the purported admission. We conceive that often the tenor and form of the admission may give some clue as to whether it was voluntarily made. However, we find no reversible error here. After the voir dire examination in the absence of the jury, the purported admissions of the defendant were detailed to the jury, and full cross-examination of the witness was allowed. No additional facts showing involuntariness were developed at this time. Absent prejudice, we will not reverse. Art. 6, § 27, Ariz.Const., A.R.S.

## WAS THE DEFENDANT DEPRIVED OF A FAIR TRIAL BECAUSE THE TRIAL JUDGE HELD CONFERENCES AT THE BENCH?

■■■ Conferences held at the bench between the court and trial counsel were sometimes reported by the court reporter and sometimes not. At one time during the proceedings, defendant's counsel objected to this procedure, but subsequently participated in such conferences without further objection. There is no suggestion that there was any offer of proof or any objection posed to the admission of evidence which occurred at these conferences which was not reported. Under these circumstances, we see no prejudicial error and refuse to reverse under the above-cited provision of the Constitution.

Judgment affirmed.

HATHAWAY, C. J., concurs.

KRUCKER, Judge (dissenting).

I dissent. I cannot agree with the view of the majority opinion.

This appeal presents for our review the defendant's conviction of embezzlement, charged in the information as follows:

"That on or about the 4th day of August, 1966, and in Pima County, Arizona, and before the filing of this Information, the said JAMES I. SCOFIELD committed theft by embezzling from ECONO-CAR INTERNATIONAL, INC. OF TUCSON, one 1966 Plymouth, Arizona License No. JMN-145, serial No. RH 41B61291071, all in violation of A.R.S. § 13–682(4) as amended, and § 13–688."

The constitutional validity of A.R.S. § 13–682(4) was timely attacked in the trial court by a motion to dismiss the information, with no success. In the trial court, as well as on appeal, the defendant argued that the statute is "void for vagueness." The defendant predicates his claim of unconstitutionality on the vagueness of the word "fraudulently."

Due process of law is denied if a statute forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it. Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

A statute, however, will be upheld if its terms may be made reasonably certain by reference to the common law or to its legislative history or purpose. See, Connally v. General Construction Co., supra. It likewise will be upheld, despite the fact that the acts it prohibits are defined in vague terms, if it requires an adequately defined specific intent. People v. Building Main-tenance Contractors' Association, 41 Cal.2d 719, 264 P.2d 31 (1953). A court, however, may not supply the definitions necessary to render a deficient statute valid. State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964); Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); People v. McCaughan, 49 Cal.2d 409, 317 P.2d 974 (1957).

The Supreme Court of the United States, in United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952), referred to the vice of vagueness in criminal statutes as:

"The treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid * * * may be as much of a trap for the innocent as the ancient laws of Caligula." 73 S.Ct. at 190.

A statutory command or prohibition in the creation of new crimes, therefore, should be very definite and easily understood by the common man. State v. Menderson, 57 Ariz. 103, 111 P.2d 622 (1941); State v. Cota, supra.

The subject statute proscribes "fraudulently failing to return a leased motor vehicle" within a specified period of time after expiration of the lease. But what is meant by "fraudulently?" The definitions adopted by courts across the country are as numerous as the courts themselves. The California courts have stated:

"The word 'fraudulently' is very broad in its meaning. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and unfair ways by which another is deceived."

People v. Casagranada, 43 Cal.App.2d 818, 111 P.2d 672, 675 (1941); People v. Simmons, 12 Cal.App.2d 329, 55 P.2d 297, 299 (1936).

In People v. Swenson, 127 Cal.App.2d 658, 274 P.2d 229, 233 (1954), the word

"fraudulently" was construed to mean with intent to defraud:

"As the term is used in an embezzlement statute making punishable a fiduciary of money who should 'fraudulently' convert the same to his own use, the word has some other than its usual meaning implying deceit, deception, artifice, trickery, *and means conversions made with intent to deprive* the beneficiary of the money permanently * * *." (Emphasis in original) 274 P.2d at 233.

In Rick v. United States, 82 U.S.App. D.C. 101, 161 F.2d 897 (1947), the word "fraudulent" was described as including an intent and involving a subject matter of which someone is to be deprived. In the case of State v. Patterson, 66 Kan. 447, 71 P. 860 (1903), the word "fraudulently" in an information alleging that the defendant did fraudulently embezzle and convert to his own use certain money was held to relate specifically to the defendant's intent in converting the city's money to his own use. (71 P. at 861).

In Raney v. State, 105 Tex.Cr.R. 608, 290 S.W. 179 (1927), the appellate court approved the trial court's definition of "fraudulent taking" as meaning the person taking the property knew at the time that the property was not his own, that the property was taken without the consent of the owner and that the property was taken with the intent to deprive the owner of the value of it and to appropriate it to the use or benefit of the person taking.

The Utah Supreme Court, in the case of State v. Bland, 93 Utah 384, 73 P.2d 964 (1937), concluded that the word "fraudulent" in a statute prohibiting the fraudulent use of a false or fictitious name was inserted in the statute "so that persons who habitually used a fixed pseudonym would not be held guilty of a felony." The court stated:

"* * * the word 'fraudulent,' inserted in section 125, must have been intended to require proof that defendant gave a wrong name with a bad motive * * *." 73 P.2d at 965.

In State v. Reinke, 147 S.W.2d 464 (Mo. 1941), where the word "fraudulently" was used in an instruction in a first degree robbery case, the court held:

"'Fraudulently' as used in the instruction refers to the doing of the act knowingly and purposely, not accidentally or by mistake." 147 S.W.2d at 465.

See also, State v. Yell, 104 N.H. 87, 178 A.2d 289 (1962).

In State v. Harris, 313 S.W.2d 664 (Mo. 1958), the Supreme Court of Missouri held that the words "feloniously and fraudulently" were not of similar import to the statutory term "intent to defraud." In arriving at this conclusion, the court analyzed the difference as follows:

"Webster's New Int. Dictionary, 2d Ed., defines the adjective 'fraudulent' as: '1. Using fraud; tricky; deceitful. 2. Characterized by, founded on, or proceeding from, fraud; of the nature of fraud. 3. Obtained or performed by artifice.' The use of the adverbial form would carry with it the idea that an act was performed by means of fraud, artifice, trick or deceit. Such means might be unlawful but not inconsistent with an intent to return to its owner property so obtained.

"In the same dictionary 'defined' is defined as: 'To deprive of some right, interest or property, by deceit; to cheat; as, to *defraud* a servant, a creditor, the state; — with *of* before the thing taken or withheld.' 'Intent' is the purpose or design with which an act is done. [Citation omitted] An intent to defraud indicates a purpose or design to deprive someone of a lawful right, interest, or property by fraudulent means and is inconsistent with an intent to return the property to its owner." 313 S.W.2d at 670.

From this heterogenous mass of judicial definitions of "fraudulently," it becomes obvious that a layman would encounter nothing but confusion were he to attempt to work out his own definition of the word. Without knowledge of the meaning of the

word, how could he determine what act on his part would run contrary to law? The State, in its brief filed herein, argues that:

"The Legislature did not wish to designate every failure to return a vehicle a crime since it is the deliberate, unjustifiable retention of another's vehicle which is intolerable. But situations are conceivable where the failure to return is for a justifiable reason. Accordingly, the Legislature modified 'fails to return' by the word 'fraudulently' to designate the willful, deliberate and unjustifiable failure to return as a crime."

And,

"* * * 'fraudulently' designates an unjustifiable, deliberate failure to return. * * *"

I find no merit in this argument. As previously indicated, it is not our function to supply definitions necessary to validate a defective statute. State v. Locks, supra. Furthermore, the legislative history of the subject statute indicates that the legislature may have intended the word "fraudulently" to mean something other than "willfully."

In 1958, a bill (S.B. 217) was introduced to the state senate which, in substance, proscribed the act of "willfully and intentionally" failing to return a leased motor vehicle within a specified period of time after expiration of the lease. The bill was subsequently amended, after submission to legislative committees, by deletion of the words "willfully and intentionally" and substitution therefor of the word "fraudulently." This bill was not enacted into law by the 1958 legislature.

In 1959, it was introduced in the House of Representatives as House Bill 224, the pertinent part of which stated that a person is guilty of theft by embezzlement who:

"Has leased or rented a motor vehicle or trailer and who fraudulently fails to return the motor vehicle or trailer to its owner within ten days after the lease or rental agreement has expired."

The bill was amended to include equipment or tools, and in such amended form was enacted into law. Laws 1959, ch. 55, § 1. It would thus appear that the meaning of the word "fraudulently" was not intended to be synonymous with "willfully and intentionally."[1]

In view of the problem concerning the meaning of the word "fraudulently," I cannot hold that the statute under which the information in this case was filed is definite and certain enough to permit this conviction to stand. The judgment of the lower court should be reversed and the case dismissed.

---

1. A counterpart California statute, § 10855 Vehicle Code, provides:

"Whenever any person who has leased or rented a vehicle willfully and intentionally fails to return with the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle."